No. 30,812.

ROBERT R. COLE, *Appellant*, v. A. L. COOK, *Appellee*.

(20 P. 2d 483.)

 Opinion filed
April 8, 1933. 

Ralph E. Page, of Ottawa, and Frank A. Holder, of Topeka, for the appellant.

Wilbur S. Jenks, of Ottawa, for the appellee.

The opinion of the court was delivered by

DAWSON, J.: This was an action for damages for injuries sustained on a public highway temporarily closed for the construction of a culvert.

Plaintiff was the guest of the owner of a motor car which was being driven westward on highway No. 54 between Meade and Liberal in the late afternoon of a stormy day, November 21, 1929. The snow and wind assumed the proportions of a blizzard as the motor car came to the intersection of highways No. 54 and No. 22. The latter highway ran north and south. At that point a wooden barrier had been erected to indicate that the road to the west was closed. A sign "Road closed" had been placed on this barricade in large, black letters on a white background; and a detour sign placed thereon read, "Detour 1 mile north to Liberal."

Plaintiff and his escort went north for more than a mile but found no road going west; so they returned to the detour sign, set the speedometer, and again proceeded north for one measured mile. There they discovered that what had been a temporary road leading west was barricaded with a sign on it saying, "Stop." The persons in the automobile returned once more to the intersection of the highways 54 and 22, and seeing that the barrier was partly knocked down so that cars could pass through, and seeing also some traces of wheel tracks indicating that cars had recently passed that way, they passed around the north end of the barrier and proceeded westward about half a mile. There they came to an excavation which was nearly filled with snow. Their car ran into it and plaintiff was injured.

In this action plaintiff charged the road contractor with negligence in various respects. Issues were joined, and the jury returned a

general verdict for plaintiff and answered special questions, some of which read:

"1. Do you find that a barricade constructed of heavy bridge planks, nailed to upright posts, had been constructed before the accident at the west side of the intersection of highways 54 and 22? A. Yes.

. . . . . . . . . . . . . . .

"3. Do you find that such barricade was in position extending from shoulder to shoulder of the highway in the morning, at noon and until about four o'clock p.m., of the 21st day of November, 1929? A. Yes, on the morning and at noon; and until about four o'clock p.m., No.

. . . . . . . . . . . . . . .

"5. If you find· that any portion of said barrier had been knocked down or removed, how long had the same been knocked down or removed before the plaintiff passed that way? A. Sometime after noon.

"6a. Do you find that there was upon the center section of this barrier a sign in large, black letters, painted upon a light board, reading 'Road closed' when installed? A. Yes.

. . . . . . . . . . . . . . .

"6c. If you ·answer 6b no, then state when such sign was removed. A. Sometime after noon.

"7. Do you find that there was a detour sign also at this intersection directing traffic coming from the east on highway 54 to turn north on highway number 22? A. Yes.

"8. Did (a), the driver of the car in which the plaintiff was riding, and also (b), the plaintiff, see such detour sign? A. (a) Yes. · (b) Yes.

"9. Could the plaintiff, with the exercise of reasonable diligence, have seen the barrier at the west side of the intersection? A. Yes.

"10. Did the plaintiff know,˙or with the exercise of reasonable diligence, could have known, that the highway west of the intersection of highways 54 and 22 was in a dangerous condition? A. No, under all the existing conditions we believe plaintiff exercised reasonable diligence.

. . . . . . . . . . . . . . .

"15. Did the driver of the car in which plaintiff was riding know, or with the exercise of reasonable diligence, could he have known, that the highway west of the junction of highways 54 and 22 was closed or in a dangerous condition? A. No, we believe under the existing conditions driver exercised reasonable diligence.·

"16. What was the proximate cause or causes of the accident? A. Misleading detour sign and bad weather.

"17. If you find that defendant A. L. Cook was negligent, then state in what such negligence consisted. A. Mr. Cook was negligent in not maintaining correct detour sign.

"18. Do you find that before and on the day of the accident the contractor had placed at the junction of highways 54 and 22 a barrier with a sign reading 'Road closed,' such words being painted in black letters at least eight inches in height on a board twelve inches wide and about five feet long, nailed to˙ the barrier? A. Yes.

"19. Was the accident occasioned by the fact that the detour sign reading 'Detour 1 mile' had not been changed so as to plainly read '5 miles'? A. Yes."

On motion of defendant the court set aside the answer to special finding No. 17, and held that defendant was entitled to judgment *non obstante* on the answers to the other special questions. Judgment was entered accordingly, and plaintiff appeals.

The proximate cause or causes of the accident as found by the jury were the "misleading detour sign and bad weather." (Finding 16.) This finding had the legal effect of acquitting defendant of any other negligence with which he was charged. (*Roberts v. Railway Co.,* 98 Kan. 705, 161 Pac. 590; *Stock v. Scott,* 132 Kan. 300, 295 Pac. 638; *Brim v. Atchison, T. & S. F. Rly. Co.,* 136 Kan. 159, 12 P. 2d 715.) The jury also found that a barricade had been placed from shoulder to shoulder of highway 54 at the intersection of the two roads, with a sufficient warning sign thereon to show that the road leading westward was closed; and that this barricade and sign were in position until some time in the afternoon of the day of the accident. The law does not require a contractor on road work to keep a guard on duty constantly to prevent motorists from knocking down these "road closed" signs and to set them up again immediately after they are knocked down. It is quite sufficient if he looks after these signs at reasonable intervals. The evidence on this point was that the detour sign and the barricade were set in place by the county engineer. But it is not important who erected the barrier and placed the sign, so long as it was in place and sufficient to warn prudent persons that the barred highway was not safe for travel. A subcontractor testified that he was accustomed to see the barricade twice a day, sometimes three times a day. Occasionally he found a portion of it knocked down and he would nail it up. "The barrier was always replaced promptly as soon as [he] found it down." "Different [motorists] got by the barrier by driving into the ditch around the barrier."

Touching defendant's delinquency as found by the jury in the matter of the misleading detour sign, "Detour 1 mile north to Liberal," it will be seen that this sign was sufficiently effective to induce plaintiff to detour to the north and not to proceed westward on highway 54—at least until after he had twice tried the detour. The question now intrudes, What was misleading in the detour sign? Merely the matter of distance to the north before a roadway to the

west would be found. This misleading information came about as follows: When highway 54 running westward was closed for the excavation and culvert work defendant had contracted to do, the state highway commission chose to direct the westbound traffic to a road or temporary way one mile north of the intersection. And the detour sign gave that information. By and by, on account of snow and bad weather, that temporary road leading westward a mile north of the intersection became impassable and the westbound traffic had to be directed to another westbound road four miles farther north.

The county engineer testified:

"Then the detour got almost impassable . . . and I notified Mr. Pearson (state highway officer) to that effect. Just when the change was made, I don't know."

"Q. There has been testimony there was a sign put up 'stop' a mile north of this junction; do you know anything about that, who put that up? A. I presume Mr. Pearson or one of his men."

The statute imposed no duty on the contractor who had taken the job of placing a culvert across highway 54 to keep tab on the shifts and changes made in the temporary detours authorized by the state highway commission. He was not bound to know that the westbound road a mile north of the intersection had become impassable and that road traffic had been detoured to another point five miles north. This conclusion of law is one of necessity; otherwise road contractors' liability for any inaccuracy of facts stated on detour signs might be indefinitely extended—clear to the boundaries of the state. What the statute says is that when a road is closed for construction work or repairs, or travel is otherwise rendered impassable or dangerous, the contractor must place at the intersection a warning sign in black letters at least four inches in height on a white background, advising the public that said road, highway, street or alley is closed or is impassable or dangerous to travel, and further advising the proper detour or temporary route to be taken by the traveling public so as to avoid said closed, impassable or dangerous road, highway, street or alley. This advice, which he must give on the detour sign, is required so that the traveling public can "avoid said closed, impassable or dangerous road." Nothing is stated in the statute as to legal consequences if the mileage of such detour is inaccurately stated, or if it eventually becomes inaccurate because of subsequent

changes in that mileage made by some public board or officer over whom the contractor has no control.

We think the special findings completely settled the issues of this lawsuit. They supersede the general verdict, and it cannot be reconciled with them. (*Tacha v. Railway Co.,* 97 Kan. 571, 155 Pac. 922; *Carlgren v. Saindon,* 129 Kan. 475, 479, 283 Pac. 620.) Moreover the special findings which the trial court permitted to stand demonstrate that defendant was not responsible in any respect for plaintiff's unfortunate accident, and he cannot be subjected to judgment in damages on account thereof.

The judgment is affirmed.