No. 34,438

OTA B. STRIMPLE, *Appellee,* v. O. K. WAREHOUSE COMPANY, INC., and THE AMERICAN SURETY COMPANY OF NEW YORK, *Appellants.*

(98 P. 2d 162)

Opinion filed January 27, 1940.

*O. L. O'Brien, Walter L. McVey* and *Laurence McVey,* all of Independence, for the appellants.

*Aubrey Neale* and *Raymond Belt,* both of Coffeyville, for the appellee.

The opinion of the court was delivered by

SMITH, J.: This was an action for personal injuries growing out of a collision between the car in which plaintiff was riding and a truck operated by defendant warehouse company. Judgment was for the plaintiff. Defendants appeal.

After the formal allegations, the petition alleged that the truck in question was being driven south on U. S. highway 75 north of Independence, Kan., by a servant of defendant warehouse company; that the trailer attached to the truck was about ten feet high and seven feet wide and the entire length was about thirty feet; that the truck and trailer were equipped with air brakes and the rear of the trailer was covered with mud; that on the same day, about 5 o'clock in the evening, the plaintiff was a passenger in an automobile being driven south on U. S. highway 75 by her daughter; that the highway at the place in question was a two-lane, hard-surfaced highway, approximately thirty feet in width; that when the automobile occupied by the plaintiff was several miles north of the city of Independence, Kan., the truck drove upon the highway and proceeded

south ahead of the automobile occupied by plaintiff; that the automobile attempted to pass the truck just before they both entered the city limits of Independence, but was unable to do so; that the driver of the truck knew, or by the use of due diligence, should have known that the car was following the truck; that due to the size of the truck the driver of the automobile was unable to observe the conditions of the traffic on the highway ahead of the truck without driving the automobile over the center of the highway. The petition further alleged that as the truck and automobile approached the city limits of Independence they both reduced their speed to about twenty-five miles an hour and as they entered the intersection of highway 75 with Oak street in the city of Independence, the automobile was being driven with due care and was following the truck at a distance of approximately thirty feet, and that as the truck approached the intersection the driver negligently and suddenly decreased the speed of the truck and stopped it with its left side in the middle portion of the highway, completely blocking the right-hand side of the highway without giving any appropriate signal; that as a result of the negligence of the defendant warehouse company the automobile occupied by plaintiff collided with the rear end of the truck, and the driver of the automobile, although using due care, could not avoid the collision, and the plaintiff was injured; that the defendant warehouse company was negligent in that the truck was so constructed that the hand or arm signal would not be visible and the rear of the trailer was not equipped with any signal light or other device to inform the driver of plaintiff's automobile that the defendant was about to suddenly decrease the speed of its truck or that said truck was about to stop or that if the truck was equipped with signal lights the same were covered with mud and were not visible; that defendant was further negligent in stopping the truck without first seeing that it could be stopped safely, and in failing to give any signal visible to the car in which plaintiff was riding of its intention to suddenly decrease its speed or to stop the truck. The petition then alleged damages sustained by plaintiff, and that the truck company was insured against public liability by the insurance company. Judgment was asked in the amount of $20,168.65 against the warehouse company and $10,000 against the insurance company.

The warehouse company filed first a general denial and then admitted that the truck was being driven south on highway 75 in

the city of Independence on the day in question. It then made an allegation which is in terms the same as a demurrer to the petition. It then alleged that the court was without jurisdiction of the parties and of the subject matter of the action. It then alleged that chapter 89 of the Laws of 1933 (Special Session) and especially section 5, paragraphs "D" and "E," were unconstitutional. The answer then alleged that if plaintiff was injured her injuries were caused by her own negligence in failing to observe reasonable care and attention for her own safety and in permitting her daughter to drive the car into the truck as the truck was approaching the "Slow" sign at the intersection of highway 75 with Oak street, and in failing to warn the driver of her car to observe reasonable care and attention in attempting to pass the truck at a dangerous rate of speed. The answer next alleges that the driver of the car was guilty of negligence in driving a car at a greater speed than is reasonable and prudent under the conditions then existing and was guilty of negligence in not decreasing the speed of her car to avoid colliding with defendant's truck as it approached the intersection, and the driver of the car was guilty of negligence in not using due care in approaching the intersection and in attempting to pass defendant's truck and negligently failing to drive her car to the left of the truck at a safe distance so as to avoid colliding with defendant's truck. The answer further alleged that plaintiff and her daughter were negligent in operating their automobile in that they were not looking at the road in front of them, not exercising due care in observing the truck ahead; that plaintiff and her daughter were engaged in a joint enterprise at the time of the alleged injury; that the negligence of the daughter was imputed to the plaintiff and was a bar to plaintiff's recovery; that they knew, or by the use of due diligence, should have known that they were approaching the intersection and that by reason of the "Slow" sign thereon the truck would slow down for the intersection, and that they negligently failed to slow down in approaching the intersection according to the traffic condition then prevailing at the intersection; that she should have seen that the truck was slowing down at the intersection, but that they negligently drove their car at an unlawful speed, faster than was reasonable and prudent in attempting to pass the truck and were driving the car too fast and too close to the truck to avoid striking it in their attempt to pass. Certain ordinances of the city of Independence

with reference to automobile traffic in the streets of Independence were also pleaded.

The reply of plaintiff was a general denial and especially a denial that the mother and daughter were engaged in a joint enterprise. At the conclusion of the evidence of the plaintiff the defendant filed a demurrer thereto on the ground that the evidence did not prove or tend to prove a cause of action against either of defendants. This demurrer was overruled.

At the conclusion of the evidence of defendants the court instructed the jury and the case was submitted. The jury returned a verdict for the plaintiff and answered special questions. The defendants moved the court for an order that the answers to special questions 5, 6, 7, 8, 8(a) and 9 be set aside on the ground that they are not supported by any competent evidence; that they were contrary to the evidence and contrary to the law. The defendants also filed a motion for judgment notwithstanding the verdict. These motions were both overruled. A motion for a new trial was also filed by defendant.

From the journal entry it appears that plaintiffs filed a motion to strike the motion for a new trial from the files and that this motion was denied, but the motion of defendants for a new trial was overruled. The defendants appealed from the judgment overruling their demurrer to the evidence, from the judgment in favor of plaintiff, from the order overruling the motion of defendants to set aside answers to special questions and from the order denying their motion for judgment on the special findings notwithstanding the general verdict.

We shall first consider the argument of defendants that their demurrer to the evidence should have been sustained. The intersection in question is that of Pennsylvania avenue and Oak street in the city of Independence. Pennsylvania avenue is also known as highway 75. From the north line of Oak street to the "Slow" sign on the highway, which was referred to in the evidence, is 127.7 feet. The intersection is paved with brick and concrete and is thirty feet wide from curb to curb. The intersection in question is about a quarter of a mile south of the north city limits. The driver of the car testified that she was the daughter of the plaintiff. On the day the collision occurred she was eighteen years of age. She testified that she collided with the truck about ten or fifteen feet back of the "Slow" sign; that she was driving a Chrysler sedan; that her mother

was sitting at her right in the front seat; her grandmother, sister and nephew were sitting in the back seat; that the truck was a big moving van; that she first noticed it on the road as she came out of Neodesha and followed it some distance on highway 75, attempted to pass it and was unable to pass; that she judged the city limits was about two blocks north of the place of collision; that after both vehicles entered the city limits they were each going about twenty-five or thirty miles an hour; that both slowed down within the city limits; that she was about thirty or thirty-five feet behind the truck when she came into Independence. Asked how it happened, the witness testified:

"A. Well, we were driving down the highway and just all of a sudden when we got up to where the accident happened why he just suddenly slowed, it seemed to me he stopped without giving any signal at all and we just hit. . . . I tried to apply my brakes."

Asked how long it was between the time that she saw him suddenly slow to the time she hit she answered: "Just right then." She testified further she had her foot on the brake and did not see any lights on the back of the truck, and that the condition of the truck was muddy and she did not see the driver of the truck give any signal. She testified further:

"Q. I will ask you if in driving along behind this truck how far could you see ahead of the truck? A. Well, I could not see ahead of the truck.

"Q. What did you have to do to see ahead of the truck? A. Well, I had to pull out to the left a little bit. Was looking at the truck just prior to the time of the collision."

She further testified that the driver asked her "If I didn't see him stop" that she said "well, you didn't give any signal"; that he said "well, can't you see that sign," and she looked down and said "well how can I, you are right over it." She testified further that there was a "Slow" sign in the road which she did not know was there before, just a little in front of the back wheels of the trailer; that the truck with relation to the center of the street was a little to the left. Later on cross-examination she testified as follows:

"Q. What was the matter there when you ran into the truck, did you misjudge your distance or were you going too fast? A. It just suddenly stopped, or slowed down in front of me.

"Q. Well, didn't you expect it to slow down at the 'Slow' sign at the intersection? A. No, I did not, I didn't know the slow sign was there, I didn't know the intersection was right there. . . .

"Q. You knew there was one ahead of you just a little ways? A. Well on up, away up."

Her sister testified that it was about 4:30 in the afternnon that the collision occurred; that she never noticed any lights on the truck. She also testified as follows:

"Q. Now after you got into where the houses were along the road just how did your car and the truck, just tell what both of you did, up to the time of the collision, as near as you can remember? A. Well I had my baby on my lap and we just suddenly slowed down and just about that time we hit."

The plaintiff testified that the daughter and she were sitting in the front seat; that they could not see ahead of the truck; that her daughter was going about twenty-five miles an hour; that the truck slowed down when it got into town; that they were about forty feet, back of the truck. She further testified:

"Q. Now, after you got into Independence there, just tell the jury what happened from thereon, to the time of the collision? A. After we got into the city limits?

"Q. Yes. A. Well we were just driving along, and it just seemed like, while I had my eyes on that truck, because I was afraid of it, because it was so big and scarey looking, it just seemed like it all at once slowed down without giving us any signal or anything, and our car just came up on it, and she put her brakes on, and just at that time we hit. It all just took place so fast that is the best I can tell about it.

"Q. How long a time expired between the time you saw the truck and the car coming together until it hit? A. I don't know, it was all done so quick, just right now is all I know about it."

The first argument of defendants is that the evidence did not establish any negligence of the truck driver. In testing the sufficiency of evidence as against a demurrer this court must consider all the plaintiff's evidence as though it were true; must draw all the inferences in favor of the plaintiff and must consider the circumstances testified to and indulge every presumption in favor of the plaintiff. This rule is well settled. (See *Clark v. Southwestern Greyhound Lines*, 148 Kan. 155, 79 P. 2d 906.) When we follow this rule we find that there is evidence which, had the jury believed and drawn every inference favorable to the plaintiff's case from it, would have warranted it in finding that this truck stopped suddenly without any warning. Chapter 283, section 47 (c), Laws of 1937, provides as follows:

"No person shall stop or suddenly decrease the speed of a vehicle without first giving an appropriate signal in the manner provided herein to the driver of any vehicle immediately to the rear when there is opportunity to give such signal."

Section 48 of the same chapter provides as follows:

*"Signals by hand and arm or signal device.* The signals herein required shall be given either by means of the hand and arm or by a signal lamp or signal device of a type approved by the department, but when a vehicle is so constructed or loaded that a hand and arm signal would not be visible both to the front and rear of such vehicle then said signals must be given by such lamp or device."

Section 90 of the same chapter provides:

*"Signal lamps and signal devices.* (*a*) Any motor vehicle may be equipped, and when a signal lamp or device is required under this act shall be equipped, with a signal lamp or signal device which is so constructed and located on the vehicle as to give a signal of intention to stop which shall be red or yellow in color and signals of intention to turn to the right or left, all of which signals shall be plainly visible and understandable in normal sunlight and at night from a distance of 100 feet to the front and rear but shall not project glaring or dazzling light; except that a stop signal need be visibile only from the rear. (*b*) All mechanical signal devices shall be self-illuminated when in use at the times mentioned in section 81."

Section 104 of the same chapter provides:

*"Mirrors.* Every motor vehicle which is so constructed or loaded as to obstruct the driver's view to the rear thereof from the driver's position shall be equipped with a mirror so located as to reflect to the driver a view of the highway for a distance of at least 200 feet to the rear of such vehicle."

From an examination of these sections and the evidence of the driver of this car, it appears that the jury would have been warranted in finding that the truck driver violated section 47 (*c*) in that he stopped his truck suddenly without giving any appropriate signal. The rule in point in a situation such as this is stated in 1 Blashfield, Cyclopedia of Automobile Law and Practice, Permanent edition, section 706, as follows:

"The driver of a motor vehicle, which obscures the vision along the public highway to such an extent as to prevent persons following him from observing conditions which ought to be known to them to insure their safety, is under an obligation to use a reasonable degree of care that warning be given of approaching danger to those whose view of the impending peril he obstructs. . . ."

There is evidence in this case that had the truck been equipped as provided in the statutes quoted and the driver observed due diligence he could have given the warning as provided in the above quotation. (See, also, *Cooper v. Kansas City Public Ser. Co.,* 146 Kan. 961, 73 P. 2d 1092.)

We conclude, therefore, that there was sufficient evidence in this

record to warrant the action being submitted to the jury on the question of whether the driver of the truck was negligent.

The defendants next argue that the evidence of plaintiff shows that the daughter was negligent and that she and her mother were engaged in a joint enterprise so that the mother was charged with the negligence of the daughter and that it was the duty of the mother to remonstrate.

Before we consider that question, we shall consider the argument of the defendant that they were entitled to judgment on the answers to the special questions. These special questions are as follows:

"1. Was the collision the result of an accident as defined in instruction No. 2? A. No.

"2. At what distance was the car driven by Virginia Lee Strimple from the defendant's truck as they approached the point of the collision? A. Thirty feet to forty feet.

"3. How far had plaintiff's car been following behind defendant's truck prior to the time of the accident? A. About nine miles.

"4. Was the defendant's truck moving at the time when struck by plaintiff's car? A. Yes. (a) If so, at what speed? A. Three to six miles.

"5. Should the plaintiff in the exercise of ordinary care for her own safety have warned her daughter that she was following too close behind the truck? A. No.

"6. Should plaintiff have warned her daughter not to attempt to pass the truck when approaching an intersection? A. No.

"7. Should plaintiff have known her car was approaching an intersection? A. No. (a) Should Virginia Lee Strimple have known she was approaching an intersection? A. Yes.

"8. Were plaintiff and daughter, Virginia Lee Strimple, using the family car for a common purpose? A. No."

By the answer to question 4, the jury found that the truck had not stopped when the collision occurred, but was moving at the rate of three to six miles an hour. By the answer to question 9, the jury found that the proximate cause of the collision was "sudden slowing down by truck driver."

The petition was drawn on the theory that the negligence of the truck driver was sudden slowing down or stopping without giving an appropriate signal. The testimony of the driver of the car in which plaintiff was riding was that the truck stopped or slowed down suddenly without giving a signal. This ground of negligence was stated in the instructions of the court to the jury. In the argument here G. S. 1937 Supp. 8-547 (c) is cited and relied on. That section makes it the duty of the driver of a vehicle to give an appropriate signal before he stops or suddenly decreases the speed of his vehicle. The

case was tried on the theory that the truck driver either stopped or, slowed up suddenly without giving any signal. The jury found on disputed testimony that the truck had not come to a stop when the collision occurred, so that question is settled for us. There is no dispute but what there was a slow sign in the street at this intersection and that the driver of the truck slowed up in obedience to this sign. Under all these circumstances it would be necessary for him to be guilty of something more than mere sudden slowing down in order to make defendants liable. In this case all parties agree that the additional element necessary is the sudden slowing down without giving any signal. There is a dispute in the evidence, however, as to whether he did give a signal. Under such circumstances the answer to question 9 becomes important. That question and answer are as follows:

"9. What do you find to be the proximate cause of the collision? A. Sudden slowing down by the truck driver."

Did the jury by the answer to this question find that the other element necessary to make the defendant liable was missing, that is, that the stopping was without an appropriate signal being given? *Cole v. Cook*, 137 Kan. 250, 20 P. 2d 483, was an action for personal injuries alleged to have been sustained when the car in which the plaintiff was riding ran into an open excavation. Among the special questions and answers was the following:

"16. What was the proximate cause or causes of the accident? A. Misleading detour sign and bad weather."

In the consideration of the action on appeal this court considered the above answer and said:

"This finding had the legal effect of acquitting defendant of any other negligence with which he was charged."

In support of that statement this court cited first *Roberts v. Railway Co.*, 98 Kan. 705, 161 Pac. 590. In that case the question asked was as to what negligence the verdict was based upon. This court held that the finding that the verdict was based upon a particular act of negligence absolved the defendant from all other acts of negligence charged in the petition. This case is one of the many in which this court has announced and followed that rule.

In *Stock v. Scott*, 132 Kan. 300, 295 Pac. 638, the action was to recover damages for fraud perpetrated upon defendant in the purchase of stock in a corporation. Many fraudulent representations were charged in the petition. In answer to a special question the

jury found that the general verdict in favor of the plaintiff was based on three particular representations. This court followed the rule that had been announced in the negligence cases and held that this finding eliminated all other fraudulent representations alleged in the petition.

The next case followed in the opinion in *Cole v. Cook*, supra, is *Brim v. Atchison, T. & S. F. Rly. Co.*, 136 Kan. 159, 12 P. 2d 715. This was a negligence case.

These cases and the many others examined by us have brought us to the conclusion that where there are two elements, both necessary to support a verdict, as closely related as the act of the suddenly slowing down of a truck and a failure to give a signal, a finding of the jury in response to a general question such as was asked here, that the truck driver did one of the acts, eliminates the other element necessary to fix liability.

In this case the sudden slowing down of the truck was not sufficient alone to make the defendants liable. There has to be the sudden slowing down without an appropriate signal. The jury refused to find that this necessary element existed. It follows that the motion of the defendants for judgment notwithstanding the general verdict should have been sustained.

The judgment of the trial court is reversed with directions to render judgment for the defendants.