ALICE ONDRACHEK AND ANOTHER v. LAWRENCE
KETTNER AND OTHERS.
C. T. McGREW, RESPONDENT.

98 N. W. (2d) 91.

July 24, 1959—Nos. 37,660, 37,661.

298

*Meagher, Geer, Markham & Anderson, O. C. Adamson II,* and *M. J. Coyne,* for appellants.

*King & MacGregor,* for respondent.

THOMAS GALLAGHER, JUSTICE.

Actions by Daniel and Alice Ondrachek to recover for damages and injuries arising out of an automobile accident which occurred about 4:45 p. m. March 8, 1955, on Highway No. 7 in Hopkins when an automobile, owned by defendants Kettner and driven westerly on Highway No. 7 by LuAllen Kettner, drove into the rear of the Ondrachek car while it was stopped on the inside westbound lane of Highway No. 7 preparatory to making a left turn onto Hazel Lane.

Just prior to the collision, defendant C. T. McGrew, driving westerly on Highway No. 7 ahead of the Kettner car, swerved his car to the left over the centerline of Highway No. 7 to pass around the Ondrachek car and thereafter swerving back to his side of the highway. It is the contention of defendants Kettner that this maneuver by McGrew constituted negligence proximately contributing to the accident in that it resulted in the driver of the Kettner car being suddenly confronted with the parked Ondrachek car without sufficient time to stop before colliding with it.

Prior to the trial, C. T. McGrew died, and a Mr. Bixby, the sole passenger in his car, was unable to appear and testify. The case was submitted to the jury which returned five-sixths verdicts against both the Kettners and McGrew. Subsequently, the court granted the latter's motion for judgment notwithstanding the verdict against him. Kettners then paid the verdicts against them, reserving all rights against McGrew including the right to enforce contribution against him. These appeals by the Kettners are from the judgments subsequently entered adjudging that plaintiffs recover nothing of McGrew and that the latter recover his costs against plaintiffs. It is the Kettners' contention that the evidence relative to McGrew's conduct was sufficient to create a fact issue for the jury as to whether it constituted negligence proximately contributing to the accident. It is McGrew's contention that since the Kettners failed to move to vacate the order for judgment notwithstanding the verdict the present appeal is improper.

A review of the evidence in the light most favorable to Kettners indicates the following: At the place of the accident Highway No. 7 is a four-lane highway with two lanes for westbound traffic and two lanes for eastbound traffic, each lane being approximately 12 feet in width. There is a double yellow centerline dividing the four lanes. At the time of the accident the day was clear and the surface of the highway dry. The westward traffic was heavy, making it difficult for a westbound car to move from one lane to another.

Shortly before the accident the three cars, traveling westerly, had moved along some four to five car lengths apart in the inside lane. Their speed ranged between 45 and 50 miles per hour which was the general speed of the westward traffic and within the limits authorized

for this area. From a distance of from two to three blocks east of the point of the accident, the driver of the Kettner car could see the continuous flow of traffic ahead of him in both lanes. The highway reaches the crest of an incline about two or three blocks east of the intersection, then proceeds downgrade for a part of the way and is level thereafter. The driver of the Kettner car concedes that he was able to see cars traveling in front of the McGrew car as it neared the intersection, and that he was aware that there were cars traveling westward ahead of the McGrew car and in the same lane, but testified that he did not know that the Ondrachek car had stopped ahead of McGrew.

As McGrew approached the stationary Ondrachek car, he quickly turned to his left and passed over the centerline to go around it. At that time there were no oncoming, eastbound cars in the lane adjacent to the centerline, but there is evidence that there were some cars approaching in the outside easterly lane. When McGrew turned to the left, the Kettner car was four to five car lengths behind him. Ondrachek testified that his car had been parked about 2 minutes in its lane facing westward with its signal lights operating to indicate that it was the driver's intention to turn to the left onto Hazel Lane. The driver of the Kettner car testified that he saw the rear brake lights of the McGrew car go on just before McGrew made the turn; that at that time the Kettner car was six or seven car lengths from the Ondrachek car; and that, in an effort to stop his car, he (Kettner) had applied his brakes until the impact with the Ondrachek car.

It is undisputed that McGrew at no time came in contact with the Ondrachek car and that nothing which he did interfered with the intent of its driver to make the contemplated left turn. It also is clear that traffic conditions made it too hazardous for the driver to turn right into the outside westerly lane.

In a memorandum attached to the order for judgment notwithstanding the verdict, the trial court stated:

"The fact that McGrew went over the center line in violation of the statute was not the proximate cause of the collision between the Ondrachek car and the Kettner car. The only question is whether Mc-

Grew owed any duty to Kettner by reason of being in a better position to see the Ondrachek car and its signal lights, and that it was stopped and so slow his car down and give appropriate signals that would warn Kettner. The movement of McGrew's car in no way affected the movement of Kettner's car unless we assume that because McGrew was driving along at a rapid rate of speed without slowing his car or showing warning lights by putting his foot to the brakes * * * Kettner could assume that he could drive along at the same rapid rate of speed. McGrew was able to extricate himself from danger by swinging to the left, as he was apparently keeping a somewhat better lookout and was in a better position to see that the Ondrachek car was stopped. * * * the physical facts indicate that if Kettner had been keeping a sharp lookout he could have seen the McGrew car swing to the left and he could have done likewise. * * * This Court can see no negligence on the part of McGrew that was the proximate, concurring or contributing cause of the collision between the Kettner car and the Ondrachek car."

■ We have discovered no decisions in Minnesota or elsewhere where a parallel situation has been involved. Certain statutes appear to have some application. M. S. A. 169.18, subd. 7, provides in part:

"When any roadway has been divided into two or more clearly marked lanes * * *:

"(a) A vehicle shall be driven as nearly as practicable entirely within a single lane and shall not be moved from such lane until the driver has first ascertained that such movement can be made with safety."

Section 169.18, subd. 8(a), provides:

"The driver of a motor vehicle shall not follow another vehicle more closely than is reasonable and prudent, * * *."

Section 169.19, subd. 6, provides that:

"No person shall stop or suddenly decrease the speed of a vehicle without first giving an appropriate signal in the manner provided herein to the driver of any vehicle immediately to the rear unless there is a good and sufficient reason for not being able to do so."

Section 169.18, subd. 9, provides that:

"Whenever any highway has been divided into two roadways by leaving an intervening space or by a * * * double center line, every vehicle shall be driven only upon the right-hand roadway and no vehicle shall be driven over, across, or within any such dividing space * * * or double center line, * * *."

■ It is clear from the statutes cited that McGrew's action in swerving to the left over the double yellow line was prima facie negligent in that the movement was contrary to the specific provisions of § 169.18, subd. 9, as above quoted.

■ Assuming this, the question remains whether such negligence was a proximate, contributing cause of the accident. It is well settled that mutual obligations and responsibilities rest upon the respective drivers of vehicles proceeding in a line of traffic. As stated in Nees v. Minneapolis St. Ry. Co. 218 Minn. 532, 537, 16 N. W. (2d) 758, 762:

"* * * The driver of the leading vehicle must exercise ordinary care not to stop, slow up, nor swerve from his course without adequate warning to following vehicles * * *. The driver of the following vehicle * * * must exercise ordinary care to avoid collision with vehicles, both those in front and those behind him. Just how close to a vehicle in the lead a following vehicle, ought * * * be driven, just what precautions a driver of such a vehicle must * * * take to avoid colliding with a leading vehicle which slows, stops, or swerves in front of him, just what signals or warnings the driver of a leading vehicle must * * * give before stopping or slowing up of his intention to do so, may not be laid down in any hard and fast or general rule."

See, also, Martini v. Johnson, 204 Minn. 556, 284 N. W. 433. And where the driver of a car following behind another car fails in carrying out the obligations imposed upon him, his negligence may be such as to constitute the sole, proximate cause of any resulting accident. Thus, in Barrett v. Nash Finch Co. 228 Minn. 156, 160, 36 N. W. (2d) 526, 529, we said:

"* * * Where the driver of an automobile plainly sees another automobile upon the highway in time to avoid a collision and negligently fails to do so, the driver's negligence is an intervening, efficient, and the proximate cause of the collision, insulating the prior negligence

of the driver of the automobile with which he collided and reducing it to a mere occasion or condition."

■ Under the statutes referred to and the principles embodied in the cited cases, we are of the opinion that, in the instant case, while McGrew's conduct was such as to establish a prima facie case of negligence, it cannot be said that it was a proximate, contributing cause of the accident. Although the duty rested upon him to give appropriate signals to the driver following him of his intent to stop, slow down, or swerve, it also imposed upon him the obligation of not bringing his car to a stop so quickly that cars following him would be endangered. Ryan v. Griffin, 241 Minn. 91, 62 N. W. (2d) 504. Had he done this instead of swerving to the left to avoid the Ondrachek car, his conduct would have increased the danger to the Kettner car and in addition would have endangered the Ondrachek car as well as his own. There is no evidence that he was traveling at an excessive speed or that he was following the Ondrachek car more closely than was reasonable and prudent. His speed was that of the cars traveling in the westbound columns of traffic including Kettners and all such cars including Kettners were spaced at about the same distance apart as they proceeded westerly.

■ Nor does it appear that McGrew's failure to signal his intent to swerve left was the proximate cause of the accident. The day was clear. The driver of the Kettner car was aware of the cars preceding him in the westbound lanes of traffic. He should have been aware that it was quite probable that one of the preceding cars might be required to make a left turn, which would first require that it be stopped so that its driver might ascertain when to complete the move in relation to the oncoming, eastbound traffic. Drivers on heavily traveled trunk highways must constantly adjust their driving and control their observations to possibilities of this kind. A vigilant lookout is at all times essential to safety. Had the driver of the Kettner car exercised such control and observations, the accident would have been avoided. The dilemma which presented itself to him likewise was presented to McGrew. When the latter discovered the Ondrachek car stopped in his lane of traffic, he acted promptly to avoid an accident. While his method of

doing so constituted a statutory violation, it would be unjust to penalize him for his promptness and alertness by compelling him to contribute to the damages which arose out of the failure of the driver of the Kettner car to exercise the same control and alertness at the time.

Our conclusions on the issue discussed make it unnecessary to determine the question of the appropriateness of this type of appeal.

Affirmed.