(966 P.2d '92)

No. 78,192

RAY HODGE, *Appellant*, v. LANZAR SOUND, INC., ROBERT L. WEMPE, and SHELTER MUTUAL INSURANCE CO., INC., *Appellees*.

—

Opinion filed October 23, 1998.

*James M. Crabtree* and *Michael L. Hodges*, of the Law Offices of Michael L. Hodges, of Lenexa, and *Albert F. Kuhl*, of the Law Offices of Albert F. Kuhl, of Lenexa, for appellant.

*Leonard R. Frischer* and *David R. Frye*, of Wallace, Saunders, Austin, Brown and Enochs, Chartered, of Overland Park, for appellee Robert L. Wempe.

*James E. Switzer*, of Johns, Lilleston & Switzer, of Clinton, Missouri, for appellee Shelter Mutual Insurance Co., Inc.

Before BRAZIL, C.J., RULON, J., and WAHL, S.J.

RULON, J.: Plaintiff Ray Hodge appeals from a directed verdict in a personal injury action. We affirm.

Plaintiff requests this court to decide if plaintiff submitted sufficient evidence to raise a jury question as to whether the negli-

gence of a phantom motorist was a causal factor in this personal injury action.

The material facts are as follows:

Defendant Robert Wempe was driving in the left lane on Interstate 35 when a tire on his van blew out. The blowout happened in a construction zone. The highway had narrowed to two lanes in each direction, and there were no side lanes or medians. Traffic was heavy but moving fast. After unsuccessfully trying to merge into the right lane, Wempe stopped his van in the left lane, blocking traffic, and exited safely.

Plaintiff entered the construction zone following an unidentified passenger vehicle (phantom motorist) at about five car lengths. Suddenly, the phantom motorist swerved from the left lane into the right lane, and plaintiff was confronted with Wempe's stalled van. Plaintiff braked hard but collided with the rear of Wempe's van. Plaintiff suffered serious injuries.

Plaintiff filed suit against defendant Robert Wempe, the driver of the van; defendant Lanzar Sound, the owner of the van; and Wempe's insurance company, defendant Shelter Mutual Insurance Company (Shelter) under the uninsured motorist coverage. Shelter stipulated that under its policy it is responsible for the liability of the phantom motorist which plaintiff was following.

At trial plaintiff alleged the phantom vehicle swerved at the last instant, without using a signal. As a result, plaintiff did not see the stalled van until it was too late for him to avoid a collision. The district court granted partial summary judgment for Shelter, holding the phantom motorist had no duty to warn plaintiff of plaintiff's approach to Wempe's vehicle.

At the close of defendants' cases, the district court entered a directed verdict for defendant Shelter, holding the phantom motorist's actions were not causal factors as a matter of law. The court also dismissed Lanzar Sound on the plaintiff's motion. The jury assigned 50% fault to Wempe and 50% to plaintiff. Plaintiff appeals from the court's directed verdict dismissing defendant Shelter.

Briefly said, we have considered Wempe's claim this court lacks jurisdiction to hear this appeal. We disagree and conclude plaintiff properly preserved the issue raised in this appeal.

In ruling on a motion for a directed verdict, the district court is required to resolve all facts and inferences reasonably to be drawn from the evidence in favor of the party against whom the ruling is sought. Where reasonable minds could reach different conclusions based on the evidence, the motion must be denied. A similar analysis must be applied by an appellate court when reviewing the grant or denial of a motion for directed verdict. See *Simon v. National Farmers Organization, Inc.*, 250 Kan. 676, Syl. ¶ 4, 829 P.2d 884 (1992).

To recover in a negligence action, the plaintiff must prove that the defendant owed a duty to the plaintiff, that defendant breached that duty, and that the breach of duty was the proximate cause of damages sustained by the plaintiff. The existence of a duty is a question of law, subject to unlimited review by an appellate court. *P.W. v. Kansas Dept. of SRS*, 255 Kan. 827, 831, 877 P.2d 430 (1994). Here, we must determine if any interpretation of the evidence would indicate the phantom motorist breached any duty owed to plaintiff.

Plaintiff alleges the last-second maneuvering of the phantom motorist placed plaintiff at a disadvantage because plaintiff did not see the stalled van in time to avoid a collision. According to plaintiff, by avoiding the van earlier, or by using a signal to warn of a lane change, the phantom motorist would have allowed plaintiff more time to prevent the collision. In order to prevail, plaintiff must show the phantom motorist had a duty to drive in a manner that allowed plaintiff sufficient opportunity to see and avoid the road hazard. In addition, assuming the phantom motorist breached this duty, plaintiff must show that the phantom's actions were a proximate cause of the accident and plaintiff's injuries.

This is a matter of first impression in Kansas. Normally, the primary duty of a motorist is to look ahead. *Hallett v. Stone*, 216 Kan. 568, 572, 534 P.2d 232 (1975). One Kansas case seems to instruct that when a vehicle blocks the view of the road ahead, in certain circumstances the driver of that vehicle has the duty to warn of upcoming hazards. *Strimple v. O.K. Warehouse Co.*, 151 Kan. 98, 104, 98 P.2d 169 (1940). In *Strimple*, the lead vehicle, a large truck, blocked the view of a vehicle trailing behind. The truck

slowed suddenly when it encountered a "slow" sign, and the following car collided with the truck. A New Jersey court has held similarly that the driver of a lead vehicle had a duty to warn of upcoming hazards. *Simpson v. Snellenburg*, 96 N.J. 518, 115 A. 403 (1921). In both cases cited above, the lead vehicles presented a greater than normal danger to other motorists due to their size and were consequently saddled with a correspondingly higher degree of care. Here, the lead vehicle was a passenger car. Plaintiff has not alleged the phantom motorist blocked plaintiff's vision more than would normally be expected. *Strimple* does not control here.

Similarly, we are convinced plaintiff cannot prove causation. The phantom motorist did not execute a maneuver that interfered with plaintiff. There is no indication the phantom motorist was even aware of plaintiff. Even if the phantom motorist failed to keep a lookout, such failure played no part in causing the collision. The negligence of the phantom motorist would be a factor if the phantom motorist struck or interfered with other motorists, but the concept of proximate cause would be stretched too far if a lead driver were saddled with the negligence of the trailing driver. Assuming a reasonable clear line of sight to the hazard, the trailing car is not put in a worse position than if the lead car slammed on the brakes and stopped successfully. The phantom motorist was entitled to assume that plaintiff would be exercising ordinary care, *Hallett*, 216 Kan. at 572, and keeping a sufficient interval to deal with any foreseeable emergency. Holding for plaintiff would place an unreasonable burden on drivers to keep a lookout to the rear at all times, which clearly is not the law. See *Hallett*, 216 Kan. at 572. If there was any negligence on the part of the phantom motorist, such could not have been a proximate cause of the collision.

In *Russell v. Cooke*, 453 A.2d 757, 758 (R.I. 1982), the defendant, in the lead car, swerved at the last second to avoid an excavation site. The plaintiff, in the trailing car, ran into the site. The *Russell* court flatly refused to recognize a duty on the part of the defendant to drive in such a manner as would allow the plaintiff sufficient opportunity to observe and avoid an apparent road hazard.

In a case with facts close to those here, the Minnesota Supreme Court held a lead driver negligent for swerving into the adjacent lane without warning but determined the driver's maneuver was not a contributing cause of the collision between plaintiff's and defendant's vehicles. *Ondrachek v. Kettner*, 256 Minn. 297, 303, 98 N.W.2d 91 (1959). The *Ondrachek* court reasoned that had the lead car attempted to stop instead of swerve, it would have increased the danger to the trailing car. The court further concluded there was a need to be vigilant for interruptions in the flow of heavy traffic. *Ondrachek*, 256 Minn. at 303.

We are convinced this court should follow the lead of other jurisdictions and hold that under normal circumstances, a lead car is under no general duty to evade a hazard in sufficient time to allow a following car to avoid the hazard as well.

Affirmed.